IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARRELL BOYD MITCHELL, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Case 3:18-CV-03119-B-BT |
| | § | |
| DIRECTOR, TDCJ-CID | § | |
| Repsondent. | § | |

## MEMORANDUM ORDER AND OPINION

Darrell Boyd Mitchell (Mitchell), a Texas prisoner proceeding *pro se*, filed this federal habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his conviction for assault/family violence, enhanced. Doc. 46. Also pending is Mitchell's motion to file an "over sized" reply brief in support of his habeas application. Doc. 101. For the following reasons, Mitchell's motion to file an "over sized" brief is granted, but, even considering that brief, his federal habeas application is denied and he is denied a Certificate of Appealability.

### I.    BACKGROUND

Mitchell was indicted in Dallas County for the third-degree felony offense of assault/family violence by impeding breath or  circulation, enhanced with a prior conviction for delivery of cocaine. Doc. 75-3 at 2. He pled not guilty and not true, but, on June 3, 2016, a jury found him guilty as charged and sentenced him to 60 years of imprisonment. *Id.*

The Fifth Court of Appeals affirmed Mitchell's conviction. *Mitchell v. State*, No. 05-16-01152-CR, 2017 WL 3033415, at *1 (Tex. App.—Dallas, 2017). The Texas Court of Criminal Appeals (CCA or state habeas court) refused his petition for discretionary review. *See* https://search.txcourts.gov/Case.aspx?cn=PD-0824-17&coa=coscca (last visited 2/23/24).

On February 14, 2019, Mitchell filed a state habeas application. Doc. 75-6 at 2. While his state habeas application was pending, he filed his initial federal petition on March 19, 2019. Doc. 10. Shortly thereafter, he moved to stay the federal proceedings so that he could exhaust his state court remedies. Docs. 16, 19, 20. The Court granted the stay. Doc. 21.

On December 11, 2019, the CCA denied Mitchell's state habeas application based on the trial court's findings and its own independent review of the record. *Ex parte Mitchell*, WR-89,237-01 (Tex. Crim. App. Dec. 11, 2019).

Almost three years after the CCA denied his state habeas application, Mitchell moved to reopen his federal habeas proceedings. Doc. 45. He filed his amended federal habeas petition on October 28, 2022. Doc. 46.The State responded. Doc. 75. Mitchell filed a reply. Doc. 99. A few months after filing his reply, Mitchell moved for leave of court to a file a second, "over-sized" reply, and that motion remains pending. Docs. 101, 102.

## II.    MITCHELL'S MOTION TO FILE "OVER-SIZED" BRIEF

Mitchell seeks  to file a second, "over-sized" reply brief. Doc. 101. He claims that his claims are complex and that he, as a *pro se* litigant, cannot concisely present them within the ten page limit for reply briefs. *See id.*; N.D. TEX. L.R. 7.2.

The Court **GRANTS** Mitchell's motion and has considered his "over sized" brief, but, as explained, even considering that brief, he is not entitled to federal habeas relief.

## III.    AEDPA STANDARD OF REVIEW

Because Mitchell filed his federal habeas application after the effective date of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), this Court's review of his claims is governed by that statute. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under the AEDPA, this

2

Court cannot grant Mitchell federal habeas relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003).

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court determines the correct governing legal principle but unreasonably applies it to the facts of the petitioner's case. *See Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of...clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"). This

3

inquiry focuses on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"). "Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004).

AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. 28 U.S.C. § 2254(d)(2) provides that federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Wood v. Allen*, 558 U.S. 290, 301 (2010)("A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams*, 529 U.S. at 410 ("[A]n

4

*unreasonable* application of federal law is different from an *incorrect* application of federal law."). Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *See Wood*, 558 U.S. at 301.

And 28 U.S.C. § 2254(e)(1) provides that a federal habeas petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *See* 28 U.S.C. § 2254(e)(1); *Schriro*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'").

Here, the state habeas court denied Mitchell's claims on the merits, so he must overcome § 2254(d)'s deferential standard of review to obtain relief. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) ("In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim.") (citing *Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

Mitchell claims that his trial and appellate attorneys were ineffective for various reasons. *See*, *e.g.*, Doc. 46 at 13-40. The constitutional standard for determining whether a criminal

defendant has been denied the effective assistance of trial counsel under the Constitution was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins*, 539 U.S. at 521. In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how to best represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland*, 466 U.S. at 688-89). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell*, 535 U.S. at 698; *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534. A reasonable probability is a

probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

Under the AEDPA's deferential standard of review, claims of ineffective assistance adjudicated on the merits by a state court—like Mitchell's—are entitled to a doubly deferential form of federal habeas review. The AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Under 28 U.S.C. § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Wheeler*, 577 U.S. 73, 77 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419-20 (2014)).

The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *See Williams*, 529 U.S. at 365 (citation omitted). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

Ultimately, a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (citation omitted).

### A.    Ineffectiveness of Mr. Price

Mitchell was initially represented by Mr. William Price, who withdrew in November 2015, months before Mitchell's jury trial started on May 31, 2016, Doc. 63-2 at 173.

#### (i)    Failure to Communicate

Mitchell alleges that Mr. Price failed to communicate with him. Doc. 46 at 21. He claims that Mr. Price only consulted with him twice during their nearly nine-month attorney-client relationship and ignored Mitchell's letters and attempts to communicate. *See* Doc. 46 at 15-17. He notes that he obtained a default judgment from the State Bar of Texas finding that Mr. Price's lack of communication violated ethical standards. *See id.* at 17.

But Mitchell fails to allege any prejudice from Mr. Price's lack of communication specifically. He does not show a reasonable probability of a different outcome had Mr. Price communicated more. He vaguely suggests that the lack of communication "deprived [him] of any information of the State's case against him, thus, preventing him from making informed decisions regarding his defense." Doc. 46 at 21. But Mitchell never specifies what information he is referencing, how it would have impacted his defense strategy, or whether he ultimately obtained it from his second trial counsel, Ms. McClung.

8

That Mr. Price was disciplined by the state bar does not necessarily mean that his performance was constitutionally inadeqaute. *See*, *e.g.*, *Nix v. Whiteside*, 475 U.S. 157, 164 (1986) ("Under the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."). Mitchell must still establish *Strickland* prejudice, which, as explained, he fails to do.

Mitchell also argues that his lack of communication with Mr. Price amounts to a constructive denial of counsel, so prejudice can be presumed. Doc. 99 at 4.

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held that a presumption of prejudice in ineffective assistance cases can arise: (1) when a criminal defendant is completely denied the assistance of counsel; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3), where the circumstances are such that even competent counsel very likely could not render effective assistance. *See Cronic*, 466 U.S. at 659. With regard to the first category of *Cronic* cases, the "Supreme Court has consistently limited the presumption of prejudice to cases where counsel is *physically* absent at a critical stage." *McDowell v. Kingston*, 497 F.3d 757, 762 (7th Cir. 2007) (collecting cases). And for the second category to apply, counsel must fail to oppose the prosecution throughout the proceedings as a whole, not just at specific points. *Bell*, 535 U.S. at 695.

*Cronic* is inapplicable here, or, at the least, its application is not clearly established. Mitchell has not identifed any critical proceeding from which Mr. Price was physically absent. Nor has he shown that Mr. Price completely failed to subject the State's case to meaningful adversarial testing. Instead, Mr. Price withdrew months before trial and did not have the chance to undermine or challenge the State's case at a trial. Mitchell points to no case saying that *Cronic*

9

would apply when the defendant's first attorney fails to communicate but is replaced by another attorney months before trial who subjects the defendant's case to rigorous adversarial testing. The Court has not located such a case, either.

At bottom,  Mitchell fails to show that the state habeas court unreasonably applied *Strickland* in denying this claim, and he is not entitled to federal habeas relief in relation to it.

### (ii)    *Failure to Investigate*

Next, Mitchell claims that Mr. Price was ineffective for not investigating exculpatory evidence and witnesses. Doc. 46 at 14, 21.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "[A]n attorney must engage in a reasonable amount of pretrial investigation and 'at a minimum,...interview potential witnesses and...make an independent investigation of the facts and circumstances in the case.'" *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (quoting *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985)). As for prejudice, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Mitchell specifically claims that Mr. Price failed to investigate two exculpatory pieces of evidence: the complainant's medical records showing that she had surgery on her vocal chords before the incident—offering an innocent explanation for the injury to her neck that the State

argued was indicative of strangulation—and jail phone call recordings in which the complainant supposedly recanted her allegations.  Doc. 46 at 15, 21.

As to the medical records, Mitchell has not shown that these records, to the extent they exist, were exculpatory. The medical records at issue were not introduced into the state habeas proceeding. But, Mitchell's second trial counsel, Ms. Robbie McClung, offered an affidavit that the state habeas court explictly credited in which she stated, "[t]here were no medical records that could help him. Damage he caused to the victim merely aggravated any damage or injury previously sustained by her." Doc. 75-10 at 2; Doc. 64-9 at 202 (findings of fact of state habeas trial court). The state habeas court's factual finding that Ms. McClung is credible is entitled to deference on federal habeas review and can only be overcome with clear and convincing evidence, which Mitchell does not provide. *See Hart v. Davis*, 2018 WL 1415205, at *6 (N.D. Tex. Mar. 20, 2018) ("It is clear the state habeas court found counsel's affidavit credible. This court may not reevaluate the conflicting affidavits or the credibility of the affiants."); 28 U.S.C. § 2254(e)(1). Thus, crediting Ms. McClung's assertion that there were no medical records that could help Mitchell, Mitchell cannot show ineffectiveness or prejudice from Mr. Price's failure to obtain them.

Nor has Mitchell shown that the jail phone recordings are exculpatory. The alleged transcriptions of the recordings that he attached to his federal pleadings—to the exent they are accurate—are not exculpatory. The complainant never recants her allegations. If anything, she reaffirms them while saying that she felt bad because of the trouble they were causing Mitchell. *See* Doc. 46 at 211.

Similarly, as for a failure to investigate witnesses, Mitchell fails to show that there were any exculpatory witnesses. Ms. McClung claimed that Mitchell did not provide any witnesses who could help him, and the state habeas court credited that assertion. Doc. 75-10 at 2. Mitchell has not overcome this factual finding for purposes of AEDPA review.

In sum, the state habeas court did not unreasonably apply *Strickland* in denying this claim.

### (iii)    *Failure to Move for Examining Trial*

Next, Mitchell faults Mr. Price for not moving for an examining trial prior to his indictment. Doc. 46 at 15.

"[T]he sole function of the magistrate conducting an examining trial [under Tex. Code Crim. Proc. art. 16.01] is to make a finding on the issue of probable cause for the purpose of committing to jail, discharging or admitting to bail the accused." *Sanchez v. State*, 354 S.W.3d 476, 488 (Tex. Crim. App. 2011). "Although a suspect's right to an examining trial is termed 'absolute', it is very well settled that this right to a preliminary hearing is not unrestricted but is in fact terminated by the return of an indictment." *Id.* (citations omitted); *see also* TEX. CODE CRIM. PROC. art. 16.01 ("accused in any felony case shall have the right to an examining trial before indictment").

Mitchell claims that there was not probable cause to hold him because the arrest warrant contained inaccurate information. Specifically, the warrant charged Mitchell with aggravated assault with a deadly weapon and claimed that, after striking the complainant several times, choking her, and banging her head against the floor, he waved a knife at her. Doc. 63-2 at 14-15. According to Mitchell, the part about the knife was incorrect, so there was not probable cause to

12

hold him on an aggravated assault with a deadly weapon charge (which was later changed to an assault family violence by impeding breath or circulation charge in the indictment).

The main evidence that he cites in support is the complainant's trial testimony:

> Q.  Okay. So at the time, did you see anything else that was concerning for you?
>
> A.  It—I—I cant be for certain, but I thought he had knife, but maybe he didn't. Because there was alot of blood and stuff, you know, and it was dripping. So I thought he had one, but it might not have been.
>
> Q.  Okay.
>
> A.  So. I can't say for sure.
>
> ....
>
> Q.  So he wasn't using a weapon to make you leave, right?
>
> A.  No. I wasn't sure—
>
> ...
>
> A.  I wasn't sure if he had a weapon or not at that time.

Doc. 63-5 at 33, 70.

Initially, it is speculative that the complainant would have been unsure about whether Mitchell had a knife at the time of an examining trial, which occurs much closer, temporally, to the events in question than a guilt-innocence trial.

But even assuming that the complainant's testimony at an examining trial would have mirrored her trial testimony, the trial testimony does not destroy probable cause. The complainant never testifed that Mitchell did not have a knife. To the contrary, she thought he had one but could not be sure. Probable cause does not require "absolute certainty." *See*, *e.g.*,

13

*Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *see also United States v. Gary*, 528 F.3d 324, 327 (4th Cir. 2008) (same).  Fairminded jurists could, at the least, debate the probable cause issue. And because fairminded jurists could debate the probable cause issue, they could also debate whether Mitchell could have prevailed at an examining trial, had Mr. Price sought one. In other words, the state habeas court could have reasonably determined that Mitchell failed to establish prejudice in relation to this claim, even assuming, for the sake of argument, ineffectiveness.

Mitchell fails to show that the state habeas court unreasonably applied *Strickland* in denying this claim.

### (iv)    *Failure to Present a Viable Defense*

Mitchell claims that Mr. Price failed to prepare a viable defense and deprived him of the opportunity to settle his case. Doc. 46 at 21. Mitchell fails to show how he was prejudiced by Mr. Price allegedly not preparing a viable defense when Ms. McClung replaced him months before the trial started.

And the record belies Mitchell's claim that Mr. Price deprived him of the opportunity to settle  this case. Instead, Mr. Price obtained an initial plea offer of five years, which Mitchell turned down. Doc. 75-10 at 2.

The state habeas court did not unreasonably apply *Strickland* in denying this claim.

### (v)    *Complaints About the State Habeas Proceedings*

Mitchell argues that the state habeas court failed to address his claims against Mr. Price, failed to rule on his motions, and failed to expand the record. Doc. 46 at 22. He notes that the state habeas court did not obtain an affidavit from Mr. Price or make any explicit findings with

14

respect to his effectiveness; instead, it only directly addressed the claims against Ms. McClung and Mitchell's appellate counsel, Mr. John Tatum. *See* Doc. 64-9 at 201-03.

However, "infirmities in state habeas proceedings do not constitute grounds for relief in federal court." *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted). Thus, to the extent that Mitchell seeks relief based on purported errors or deficiencies in the state habeas proceedings, he is not entitled to it.

## B.    Ineffectiveness of Ms. McClung

Ms. Robbie McClung replaced Mr. Price as Mitchell's trial counsel. Mitchell claims that Ms. McClung was ineffective.

### (i)    Failure to Communicate

Mitchell claims that Ms. McClung was ineffective because she only communicated with him once for ten minutes in the six and half months before trial, despite his numerous attempts to contact her about defense preparations. Doc. 46 at 24, 25, 30.

But Mitchell fails to show how he was prejudiced by this specifically. Therefore, the state habeas court did not unreasonably apply *Strickland* in denying this claim.

### (ii)    Failure to Investigate

Mitchell claim that Ms. McClung failed to investigate several defense strategies he conveyed to her, failed to inform him that an investigator had been appointed, and failed to direct the investigator to investigate the case until days before trial. Doc. 46 at 24.

Mitchell does not explain how he was prejudiced by Ms. McClung not informing him that an investigator had been appointed or by allegedly waiting until days before trial to tell the investigator to investigate, so the state habeas court did not unreasonably apply *Strickland* in denying these aspects of the claim.

Nor did it unreasonably deny Mitchell's claim that Ms. McClung failed to investigate. Ms. McClung's affidavit—which, again, the state habeas court explictly credited—shows that she investigated the allegedly exculpatory witnesses whose names Mitchell provided and determined that they could not help him. Doc. 75-10 at 2. So, there was no failure to investigate exculpatory witnesses. And even if there was, Mitchell shows no prejudice. He does not explain in any detail what information these allegedly exculpatory witnesses could have provided that could have altered the outcome given the extensive evidence against him (of note, Mitchell admitted assaulting the complainant in a letter to her, witnesses heard Mitchell beating the complainant, and there were photographs of the complainant's injuries while she was in the hospital). Doc. 75-10 at 2.

As for the medical records, Ms. McClung stated that "there were no medical records" that could help Mitchell because "[d]amage he caused to the victim merely aggravated any damage or injury previously sustained by her." Doc. 75-10 at 2. Again, the state habeas court credited this assertion, and Mitchell has not overcome that factual determination. So he fails to show the existence of any exculpatory medical records that could have helped him or, necessarily, that Ms. McClung was ineffective for failing to obtain them.

As for the jail phone records, as noted above, they are not helpful, and Mitchell fails to show  any prejudice from Ms. McClung's alleged failure to investigate them.

16

Mitchell also references a "store video" (Doc. 46 at 24), but he does not explain the significance of this video other than a conclusory assertion that it was "crucial to proving the lack of honesty" in the complainant's statements to police. Such conclusory allegations do not warrant federal habeas relief. *See, e.g.*, *Martinez v. Dretke*, 426 F.Supp.2d 403, 541 (W.D. Tex. 2006) ("Conclusory assertions on an ultimate issue do not furnish a basis for federal habeas relief.") (citing *Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir. 1994) (further citation omitted).

The state habeas court did not unreasonably apply *Strickland* in denying this claim.

### *(iii)    Failure to Introduce Exculpatory Evidence*

Next, Mitchell claims that Ms. McClung was ineffective for not introducing the jail phone recordings in which the complainant supposedly admitted she made a false report, the complainant's medical records, and Dallas County police reports allegedly showing that the complainant had a penchant for making false accusations. Doc. 46 at 28, 32, 278-79.

As discussed, Mitchell has not shown that any exculpatory jail recordings or medical records existed, so he has not shown his counsel acted unreasonably in failing to introduce them.

As for Mitchell's claims that Ms. McClung should have introduced police reports showing the complainant's propensity for making false accusations, he attached police reports to his federal habeas application showing that the victim complained of domestic violence five times between 1996 and 2013. Doc. 46-1 at 75-93. In one report, a witness claimed that, contrary to the complainant's statement to police, the complainant had started the fight. Doc. 46-1 at 78. None of the other reports undermine the complainant's veracity.

At any rate, these records were not part of the state court proceedings, and Mitchell fails to show that this case presents one of "the quite limited situations" in which a federal habeas

court can consider extraneous evidence on a claim litigated on the merits in state court. *Shoop v. Twyford*, 596 U.S. 811, 819 (2022). The claim to which this evidence relates does not rely on a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court. *Id.* (citing § 2254(e)(2)(A)). Nor does the claim to which the evidence relates rely on a "factual predicate that could not have been previously discovered through exercise of due diligence." *Id.* To the contrary, Mitchell knew about and raised this claim in the state habeas proceeding, but the reports themselves were not introduced. *See* Doc. 64-10 at 39. Thus, this Court cannot consider the police reports on federal habeas review.

This Court must instead evaluate the state habeas court's rejection of this claim based on what was in the record before it, which was a conclusory claim that "counsel failed to present to the jury admissible evidence of multiple Dallas Police incident reports that disclosed as fact [the complainant's] behavior pattern of making assaultive complaints against known associates when she becomes angry and using intoxicants." Doc. 64-10 at 39. But without any meaningful details about the reports and the circumstances that spawned them, this claim is conclusory and vague, and the state habeas court did not unreasonably apply *Strickland* in rejecting it. *See, e.g., Carter v. Davis*, 2019 WL 3095989, at *4 (N.D. Tex. Apr. 29, 2019) ("Federal courts do not 'consider a habeas petitioner's bald assertions on a critical issue in his pro se petition...mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.'") (citing *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting, in turn, *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)).

18

(iv)    *Failure to Object to the Credentials of Dr. Herndon*

Mitchell claims that Ms. McClung merely "challenged" the state expert's credentials rather than "object, under the confrontation clause, to what the doctor would be testifying to." Doc. 46 at 28.

Dr. Herndon did review the victim's medical records, including a radiology report that mentioned potential vocal chord paralysis and edema, which, according to Dr. Herndon are consistent with strangulation. Doc. 63-5 at 153. To the extent that Mitchell is claiming this testimony violated the Confrontation Clause because the radiologist did not testify, such an argument is frivolous.

The Confrontation Clause only applies to testimonial statements. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). A statement is testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 344, 358-59 (2011). The Supreme Court has held that medical records created for treatment purposes are not testimonial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312, n.2 (2009); *see also Barker v. Lumpkin*, 2023 WL 3261779, at *7 (S.D. Tex. May 4, 2023) ("[R]ecords related to medical treatment and diagnosis are not considered testimonial and are not inadmissible under the Confrontation Clause or *Crawford*."). There is no indication that the radiologist report here was created for anything other than a treatment purpose. Thus, an objection based on the Confrontation Clause would have been futile, and counsel is not required to make futile motions or objections. *See Koch v. Puckett*, 907 F.2d 524 (1990).

The state habeas court did not unreasonably apply *Strickland* in denying this claim.

19

### (v)    Failure to Object to the Warrant and Cause Number

As noted, Mitchell's arrest warrant claimed that he waved a knife at the complainant and listed the offense as aggravated assault with a deadly weapon. Doc. 63-2 at 14. The indictment, however, charged him with assault/family violence and did not mention the knife. Doc. 75-3 at 2. Despite this development, the case proceeded under the same cause number F15-75208-I, and Mitchell appears to claim that Ms. McClung should have objected to that.

To the extent that Mitchell is claiming there is a variance between the arrest warrant and indictment to which Ms. McClung should have objected, Mitchell fails to show such an objection would have merit, and counsel is not required to raise meritless objections. In Texas, "[a] variance exists 'where there is a discrepency between the allegations in the charging instrument and the proof at trial.'" *Williams v. State*, 270 S.W.3d 140, 144 n. 2 (Tex. Crim. App. 2008) (quoting *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)). But Mitchell cites no authority—nor has the Court located any—showing that the fatal-variance doctrine applies to the initial charges lodged by police upon a person's arrest and the formal charges outlined in an indictment. *See, e.g., Moore v. Quarterman*, 2009 WL 10654176, at *9 (S.D. Tex. June 25, 2009) ("Moore cites no authority showing that the fatal-variance-doctrine applies to the initial charges lodged by police upon a person's arrest and the formal charges outlined in an indictment.")

The state habeas court did not unreasonably apply *Strickland* in denying this claim.

### (vi)    Entrance into Agreement Without Mitchell's Consent

Mitchell claims that Ms. McClung entered into an agreement with the State without his consent not to bring up the criminal and mental histories of the complainant and another witness. Doc. 46 at 28.

20

Mitchell fails to show ineffectiveness. An attorney must consult with the client regarding "important decisions," including questions of "overarching defense strategy." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (cleaned up). "That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Id.* (citing *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval). "The only decisions that have been identified by the Supreme Court as belonging exclusively to the defendant are 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'" *United States v. Chapman*, 593 F.3d 365, 368 (4th Cir. 2010) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Decisions about basic evidentiary strategy like whether to impeach a witness or to stipulate that certain evidence is inadmissible are generally left to counsel, who need not obtain the defendant's consent beforehand. *See, e.g.*, *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1988) ("Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.") (internal quotation marks omitted).

Because Mitchell only complains that Ms. McClung failed to consult him about a particular evidentiary issue and not some overarching trial strategy like whether to plead guilty or testify, he has not shown ineffectiveness, and the state habeas court did not unreasonably apply *Strickland* in rejecting this claim.

21

*(vii) Failure to Subpoena Witnesses*

Mitchell claims that Ms. McClung was ineffective for failing to subpoena several witnesses. Doc. 46 at 30.

Complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on an ineffective assistance of counsel claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Id.* (citing *Alexander v. McCotter*, 775 F.2d 595, 602 ( 5th Cir. 1985)).

Mitchell has not come close to meeting that burden. At best, he identifies the witnesses and hints that they would have provided helpful testimony. But he does not explain in any detail what that testimony would have been. Nor does he offer any evidence or affidavits that these witnesses were available and could have testified at his trial. *See*, *e.g.*, *Favors v. Cain*, 2015 WL 349263, at *25 (E.D. La. Jan. 22, 2015) ("With regard to defense counsel's failure to call witnesses, Favors has not produced any evidence or affidavits from either Shorty or his girlfriend to establish that they were willing or available to testify at trial.").

Further, Ms. McClung stated in the state habeas proceedings that "[t]here were no eyewitnesses," and, though he provided her with names of potential witnesses, "[t]here was no witness whose name he provided who could help him." Doc. 75-10 at 2. Again, the state habeas court credited that assertion, and Mitchell has not rebutted it.

22

In sum, Mitchell fails to show that Ms. McClung failed to subpoena an available and willing witness who would have provided favorable testimony, so the state habeas court did not unreasonably apply *Strickland* in denying this claim.

(viii)   *Failure to Provide Case File*

Mitchell claims that Ms. McClung and her law partner, Mr. Richard Franklin, were ineffective for failing to provide him with his complete case file following the trial despite several requests. Doc. 46 at 29, 30, 31. He acknowledges that Mr. Franklin responded to his inquiry, but claims that the materials Mr. Franklin sent did not include the complete case file. *Id.* at 29.

Mitchell has not provided any authority suggesting that counsel acts ineffectively for failing to give a client a complete copy of his case file to help prepare a habeas petiton, nor has the Court located any.

But even if Mitchell could show ineffectiveness he does not show that the case file would have assisted him in obtaining collateral relief. He claims that the case file contained the medical records introduced by the State at trial, but Mitchell does not explain how they could have helped him, especially when they were already in the state habeas record.  To the extent that Mitchell speculates that his case file contained allegedly exculpatory medical records, such speculation fails to establish prejudice—especially when the state habeas court credited Ms. McClung's assertion that such evidence did not exist. *See, e.g., Robinson v. Smith*, 2022 WL 17970411, at *10 (N.D. Tex. Nov. 28, 2022), *rec. accepted* 2022 WL 17961396 ("Because his conclusory allegations are insufficient to establish prejudice, Petitioner has not satisfied his burden under *Strickland*.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

The state habeas court did not unreasonably apply *Strickland* in denying this claim.

23

(ix)    *Failure to Raise a Defense of Self-Defense*

Mitchell blames Ms. McClung for not pursuing a self-defense argument. Doc. 46 at 31. But whether to pursue a self-defense strategy "is a strategic one entitled to deference from this court." *Chandler v. Dir., TDCJ-CID*, 2021 WL 4445303, at *13 (N.D. Tex. Sept. 8, 2021), *rec. accepted* 2021 WL 4439799 (N.D. Tex. Sept. 28, 2021). Strategic decisions made by counsel during the course of the trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689.

Here, the state habeas court could have reasonably concluded that Ms. McClung decided not to pursue a self-defense strategy because it would have been futile. This is evident from Ms. McClung's affidavit:

> There were no eyewitnesses, but there were witnesses who heard the beating and saw Mitchell and the victim before and after the event. There were photographs of the victim's injuries while she was in the hospital. There was a letter from him, written from jail prior to trial, to the victim containing an admission that he had hit her.
>
> Mitchell gave us names of people who he said could prove his innocence, though he was never able to explain how the victim got the injuries to her face or why he admitted he hit her. There was no witness whose name he provided who could help him. There were no medical records that could help him. Damage he caused to the victim merely aggravated any damage or injury previously sustained by her. The ear witness called the police during the incident and told the dispatcher that "this girl is getting killed." She testified at trial that the victim was "being choked to shut up."

Doc. 75-10 at 2.

And Mitchell fails to show that such a strategy was unreasonable. Pursuing such a self-defense strategy —given the lack of anything to support it— might have made Mitchell look

24

worse to the jury. Ms. McClung could have reasonably concluded that the better strategy was to create doubt about whether Mitchell abused the complainant in the first place.

Mitchell fails to show that the state habeas court misapplied *Strickland* in denying this claim.

### C.    Ineffectiveness of Mr. John Tatum

#### (i)    *Failure to Consult*

Mitchell claims that his appellate counsel, Mr. Tatum, failed to adequately consult with him because he only met with him once via video phone and ignored several of his letters. Doc. 46 at 35-37.

Mr. Tatum submitted an affidavit to the state habeas court addressing his representation of Mitchell. Doc. 75-18 at 2-7. Mr. Tatum's affidavit shows that he  consulted with Mitchell at all relevant points in the appellate process. *Id.* at 4-7. The state habeas court credited this affidavit as truthful. And because Mitchell has not rebutted that finding with any evidence—much less clear and convincing evidence—he has in turn failed to show that Mr. Tatum was ineffective for failing to communicate with him.

The state habeas court did not unreasonably apply *Strickland* in denying this claim.

#### (ii)    *Failure to Brief*

Next, Mitchell claims that Mr. Tatum failed to raise his ineffective assistance of counsel claims on appeal, specifically his claim that his attorneys should have moved for an examining trial, which would have shown a lack of probable cause to arrest him. Doc. 46 at 37; Doc. 102 at 21-23.

The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997). To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001). Effective appellate counsel is not required to assert every nonfrivolous available ground for appeal. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). The test to be applied in assessing whether counsel was ineffective for failing to brief an issue is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007) (citations omitted).

Mitchell fails to show that the ineffective assistance of counsel arguments were clearly stronger than the issue that Mr. Tatum submitted: that the trial court erred in not accepting the jury's determination that Mitchell was only guilty of the lesser included offense of simple assault. *See generally* Doc. 63-12. Rather, Texas courts and federal courts reviewing the habeas claims of Texas prisoners have long observed that ineffective assistance of counsel claims are best presented on collateral review. *Oatman v. Davis*, 2016 WL 11738190, at *7 (W.D. Tex. Sept. 27, 2016) ("In Texas, habeas corpus is the preferred vehicle for gathering the necessary record to evaluate the efficacy of trial counsel.") (citing *Ex Parte Torres*, 943 S.W.2d at 475). Mitchell fails to explain why Mr. Tatum should have gone against that prevailing wisdom.

Further, as explained above, this ineffective assistance of counsel claim was meritless because Mitchell fails to show there was not probable cause to hold him.

26

The state habeas court did not unreasonably apply *Strickland* in denying this claim.

    *(iii)*    **Conflict of Interest**

Mitchell claims that Mr. Tatum had a conflict of interest because he was affiliated with Ms. McClung and Mr. Richardson's law practice. Mitchell notes that Mr. Tatum is listed as "of counsel" on Ms. McClung and Mr. Richardson's firm letterhead. Doc. 64-9 at 55.

A lawyer's conflict of interest may be so flagrant as to constitute a violation of the Sixth Amendment. *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978); *United States v. Gentry*, 941 F.3d 767, 776 (5th Cir. 2019). When a conflict of interest springs from multiple representation, a presumption of prejudice under *Cuyler v. Sullivan*, 446 U.S. 335, 358 (1980), governs. *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019). Under this standard, a defendant must show that his counsel labored under an actual conflict of interest that adversely affected his performance at trial. *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). Where an attorney's alleged conflict of interest springs not from multiple client representation, however, but from a conflict between the attorney's *personal* interest and that of his client, the standard of *Strickland* applies, and the *Cuyler* presumption is inapplicable. *Gentry*, 941 F.3d at 776-77.

Here, the state habeas court credited Mr. Tatum's statement that he only had an office sharing arrangement with Ms. McClung and Mr. Richardson and had never been partners with them. Doc. 75-18 at 5. The Supreme Court has never held, and the Court is aware of no holding in the Fifth Circuit, that a criminal defendant receives ineffective assistance of counsel simply because his appellate attorney works in the same office as his trial attorney. *See, e.g.*, *Hamilton v. Johnson*, 2014 WL 12927578, at *10 (N.D. Ga. Mar. 3, 2014) ("However, the Supreme Court has never held, and the Court is aware of no holding in the Eleventh Circuit, that a criminal

defendant receives ineffective assistance of counsel simply because his appellate attorney is the same as (or works in the same office as) his trial attorney.").

Thus, the state habeas court did not unreasonably apply *Strickland* in denying this claim.

## V. TRIAL COURT ERROR

Mitchell claims that the trial court violated his Due Process right to be heard by failing to rule on his *pro se* motions to substitute or dismiss counsel, for an examining trial, and to dismiss the prosecution. Doc. 46 at 41-44.

But Mitchell was represented by an attorney when he filed his many motions. And a trial court is not required to entertain *pro se* motions filed by a represented party. *See, e.g.*, *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998)(defendant has right to represent himself, or to receive competent representation from an attorney, but not both); *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001) (a district court is not required to entertain *pro se* motions filed by a represented party); *Cheadle v. Dinwiddie*, 278 F. App'x 820, 824 (10th Cir. 2008) (concluding that the state trial court's refusal to read the *pro se* motions of a represented defendant did not violate the Due Process Clause). Thus, the trial court's refusal to rule on Mitchell's *pro se* motions did not violate his Due Process right to be heard.

The state habeas court's rejection of this claim was not contrary to, nor did involve an unreasonable application of, clearly established federal law, so Mitchell is not entitled to federal habeas relief.

## VI.    REQUEST FOR AN EVIDENTIARY HEARING

Mitchell seeks an evidentiary hearing so that the Court can consider "facts outside of the record." Doc. 102 at 34-35.

If a petitioner failed to develop the factual basis of a claim in state court, he may obtain an evidentiary hearing on a claim in federal court if he shows that: (1) either "the claim relies on...a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or "a factual predicate that could not have been previously discovered through the exercise of due diligence;" and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

Habeas petitioners are not entitled to a federal evidentiary hearing to develop new evidence to attack the state court's resolution of their claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Under AEDPA, the proper place for development of the facts supporting a claim is the state court. *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997). When, as here, a petitioner's claims have been rejected on the merits by the state courts either on direct appeal or during a state habeas corpus proceeding, further factual development of the record is effectively precluded. *See Pinholster*, 563 U.S. at 181-88 (holding that an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by § 2254(d)(1)).

Here, Mitchell does not show that any of his claims involve a new rule of constitutional law made retroactive on collateral review. Nor does he show that any of his claims rely on a new factual predicate. Instead, the state records shows that he was aware of all of his claims during the state habeas proceedings, which is why he presented them there. Indeed, because the state habeas court adjudicated Mitchell's claims on the merits, he is not entitled to an evidentiary

hearing in federal court, and his request for one is denied. *See, e.g.*, *Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 472 (5th Cir. 2023) ("Because Mendoza's claims were adjudicated on the merits in state court, an evidentiary hearing could not have aided the district court in its review. Therefore, the district court did not abuse its discretion in denying Mendoza's motion for an evidentiary hearing.").

## VII.    CERTIFICATE OF APPEALABILITY

Under AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability. 28 U.S.C. § 2253(c)(2). A COA will not be granted unless a petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)).

This Court addressed the merits of all of Mitchell's claims. And, for the all of the reasons discussed in this opinion, reasonable minds could not debate this Court's assessment of those claims. Mitchell is not entitled to a Certificate of Appealability on any of his claims for relief.

## VIII.    ORDER

Mitchell's motion to file an "over sized" repy brief (Doc. 101) is **GRANTED.** Mitchell's federal habeas application under 28 U.S.C. § 2254 is **DENIED**, he is **DENIED** a certificate of appealability, and by separate judgment this case will be dismissed.

DATED: February 29,2024.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE